IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE THE MATTER OF: ) | CASE NO. 16-10168 | |
| JOHN C. TOMBERLIN, Debtor ) | | |
| ) | | |
| JOHN C. TOMBERLIN, ) | | |
| ) | | |
| Appellant, ) | | |
| ) | | |
| v. ) | CIVIL ACTION NO. 2:17cv872-ECM | |
| ) | | |
| NCP BAYOU 2, LLC, ) | | |
| ) | | |
| Appellee. ) | | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This appeal is from a final judgment in a bankruptcy adversary proceeding, including a November 3, 2017 Memorandum Opinion and Order (doc. 1-2) and a December 19, 2017 Order denying a motion to amend judgment or make additional findings (doc. 1-3), of the United States Bankruptcy Court for the Middle District of Alabama (the "bankruptcy court").[1]

For the reasons discussed below, this court concludes that the judgment of the bankruptcy court is due to be AFFIRMED.

**II. JURISDICTION AND STANDARD OF REVIEW**

This Court has appellate jurisdiction over this appeal from a final judgment of the

---

[1] While the Appellant's notice of appeal includes the December 19, 2017 Order denying a motion to amend judgment or make additional findings, the Appellant does not include an issue from the Order denying his motion in the issues presented for appeal. (Doc. 13 at 14).

bankruptcy court pursuant to 28 U.S.C. §158(a).

In an appeal of a bankruptcy court decision, the district court sits as an appellate court. *Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000). The district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and conclusions of law under the *de novo* standard of review. *In re Piazza*, 719 F.3d 1253, 1260 (11th Cir. 2013). "The court may affirm the bankruptcy court's judgment 'on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.' " *Perry v. United States*, 500 B.R. 796, 798 (M.D. Ala. 2013) (Watkins, J.) (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).

### III. FACTUAL AND PROCEDURAL HISTORY

The Plaintiff in the adversary proceeding, 2009-1 CML-ADC Venture, LLC ("Multibank"), was a judgment creditor of the Defendant and Debtor, John C. Tomberlin ("Tomberlin"). Tomberlin is the sole owner of South Alabama Diagnostic Imaging, P.C. ("SADI").

On January 28, 2016, Tomberlin filed a chapter 7 bankruptcy petition. Multibank filed this adversary proceeding to object to Tomberlin's discharge in bankruptcy. Multibank brought three counts asserting grounds for denial of discharge under 11 U.S.C. §§727(a)(2), 727(a)(3), and 727(a)(4). Multibank later voluntarily dismissed its claim under §727(a)(3).

The case was tried before the bankruptcy court. The bankruptcy court ruled from

the bench in favor of Tomberlin as to one count, brought pursuant to 11 U.S.C. §727(a)(4). On November 3, 2017, the bankruptcy court issued a judgment in favor of Multibank on the remaining count, brought pursuant 11 U.S.C. §727(a)(2), denying Tomberlin's discharge on the basis of a finding that Tomberlin acted with intent to hinder or delay a creditor. (Doc. 1-2). It is the court's judgment on this claim from which Tomberlin appeals.[2]

In the Memorandum Opinion and Order, the bankruptcy court made certain findings of fact. The bankruptcy court found that Multibank was a judgment creditor of Tomberlin, having obtained a judgment in the amount of $20,576,899.91 on a guarantee. Multibank received this judgment in 2014. The bankruptcy court also found that in 2015, the Internal Revenue Service ("IRS") levied against Tomberlin's personal bank accounts for money owed as a result of a 2010 IRS audit. Until September 2015, Tomberlin used personal bank accounts at Regions Bank for personal expenditures. (Doc. 1-2 at 2). After the IRS levy, Tomberlin deposited the salary paid by SADI into the SADI account, not his personal checking account. (Doc. 1-2 at 2). He then used the SADI account as he had previously used his personal checking account. (Doc. 1-2 at 2). Tomberlin also took out a loan from his life insurance company and deposited the loan proceeds into the SADI checking account. (Doc. 1-2 at 2-3). In December 2015, Tomberlin closed his personal checking

---

[2] Tomberlin's appeal encompasses the court's judgment (doc. 42), the order denying discharge (doc. 43), and the order denying Tomberlin's Motion to Amend Judgment or Make Additional Findings (doc. 49). See, Notice of Appeal. (Doc. 51).

accounts. (Doc. 1-2 at 3). Other personal income such as rental property income, a loan payment check, and proceeds from the sale of real property were also deposited in the SADI checking account. (Doc. 1-2 at 2). After filing the underlying chapter 7 bankruptcy petition, Tomberlin continued to transfer salary checks to SADI. (Doc. 1-2 at 3). The bankruptcy court ultimately found that Tomberlin had taken these actions with intent to delay or hinder a creditor and denied discharge. (Doc. 1-2 at 5).

On December 1, 2017, Multibank transferred all of its rights, title, and interests in the judgment against Tomberlin to NCP Bayou 2, LLC ("NCP"). NCP was substituted as the Appellee in this case on January 31, 2018. On November 19, 2017, the bankruptcy court issued an Order, in accordance with the ruling in open court, denying Tomberlin's motion to amend judgment or make additional findings. (Doc. 1-5).

### IV. STATEMENTS OF THE ISSUES

Tomberlin identifies the issues for review on appeal as follows:

1. Whether the bankruptcy court abused its discretion by failing to consider Tomberlin's whole pattern of conduct when it determined he acted with actual intent to hinder, delay or defraud the IRS as proscribed by 11 U.S.C. §727(a)(2)(A) by depositing his salary paychecks and other personal funds into SADI's account so as to warrant denial of his discharge.
2. Whether the bankruptcy court abused its discretion by creating law that effectively negates bankruptcy relief to good faith debtors who take steps to merely get-by before filing for relief under the Bankruptcy Code.

(Doc. 13 at 8).

The Appellee, NCP, reframes the issues as follows:[3]

1. Whether Dr. Tomberlin's pre-petition deposits of personal income into his professional corporation's operating account were transfers made with the intent to hinder or delay creditors.
2. Whether Dr. Tomberlin's concealment of equitable interests in property were made with the intent to hinder or delay creditors.
3. Whether 11 U.S.C. §101, *et. seq.* (the "Bankruptcy Code"), as a matter of law, allows a debtor to use third-party financial accounts in the months leading up to the filing of a bankruptcy petition so that the debtor might protect assets during a planning period.

(Doc. 14 at 5).

## V. DISCUSSION

Section 727(a)(2)(A) of the Bankruptcy Code provides that a debtor may not obtain a discharge in bankruptcy if

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
> **(A)** property of the debtor, within one year before the date of the filing of the petition; or
> **(B)** property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727.

To successfully object to a discharge under § 727(a)(2)(A), a creditor must establish (1) that the act complained of was done within one year prior to the date the bankruptcy

---

[3] See FED.R.BANK.PRO. 8014.

petition was filed, (2) that the act was done with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted of transferring, removing, destroying, or concealing any of the debtor's property. *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008). In his appeal, Tomberlin concedes elements one, three, and four, but argues that the bankruptcy court erred in finding that element two, intent to hinder or delay a creditor, was proven in this case. (Doc. 13 at 16).

With respect to element two, a creditor must prove that, at the time of the transfer, the debtor possessed the actual intent to hinder, or delay, or to defraud a creditor. *See In re Miller*, 39 F.3d 301, 306 (11th Cir. 1994). Although Tomberlin insists that he acted on the advice of professionals and without an intent to defraud, intent to defraud need not necessarily be shown because the statutory "language is written in the disjunctive [so that] intent to hinder is sufficient by itself, as is intent to delay." *In re McKeever*, 550 B.R. 623, 639 (Bankr. N.D. Ga. 2016). The Bankruptcy Code does not define "delay" or "hinder," but the plain meaning of "delay" is "to retard," "obstruct," "put off" and "postpone," while "hinder" means "obstruct" or "impede." *Black's Law Dictionary* 425 & 729 (6th ed. 1990). Debtors have been said to act with an intent to hinder their creditors if they intend to impede or obstruct them, and to act with intent to delay if they intend to slow or postpone their creditors. *In re Boudrot*, 287 B.R. 582, 586 (Bankr. W.D. Okla. 2002).

The bankruptcy court, in finding intent to hinder or delay in this case, relied in part on a previous decision in which it had found the requisite intent established by

6

circumstantial evidence and inferred from the debtor's entire course of conduct. (Doc. 1-2 at 3)(citing *In re Hiett*, 519 B.R. 341, 353 (Bankr. M.D. Ala. 2014)). The bankruptcy court examined Tomberlin's course of conduct and found that prior to September 2015, Tomberlin's SADI salary was deposited into his personal checking account, and that after September 2015, when the IRS levied against his personal account, Tomberlin deposited personal funds into the SADI account. The bankruptcy court also found that after Multibank obtained a judgment against Tomberlin in 2014 in the amount of $20,576,899.91, Tomberlin altered his previous practice of depositing his salary in his personal account and, instead, deposited it into a business account, thereby shielding the funds from garnishment and levy. (Doc. 1-2 at 4). The bankruptcy court also found that after Tomberlin filed his chapter 7 bankruptcy petition, he continued to transfer his salary checks to SADI. (Doc. 1-2 at 3).

The bankruptcy court concluded that, based on Tomberlin's admissions and evidence of his course of conduct, Tomberlin knowingly transferred money to a separate entity's account to protect the money and prevent garnishment and thereby acted with intent to hinder or delay a creditor. (Doc. 1-2 at 5). Indeed, Tomberlin acknowledged that he used the SADI account instead of his personal account to "protect" his money. (Doc. 1-2 at 5).

Tomberlin argues that the bankruptcy court applied an improper legal standard in finding that he intended to hinder or delay. Tomberlin contends that while his transfer of

7

paychecks and other personal funds to the SADI corporate account were transfers, they were on the advice of professionals and were designed merely to allow him to "get by" until he filed a petition for bankruptcy, with no indicia of deceit or dishonesty.

The bankruptcy court's determination of whether a debtor acted with the requisite intent is a question of fact reviewed for clear error. *See In re Miller*, 39 F.3d at 307. "To block a debtor's discharge pursuant to § 727(a)(2), a creditor is not required to adduce direct evidence of a debtor's bad intent." *See In re Kane*, 755 F.3d 1285, 1339 (11th Cir. 2014). Intent may be established by circumstantial evidence or inferred from the debtor's course of conduct. *In re Jennings,* 533 F.3d at 1339.

This Court concludes that the bankruptcy court correctly applied the appropriate legal standards and finds that, based on the testimony adduced at trial of Tomberlin's purposeful use of a corporate account to protect his money from levy and garnishment, the bankruptcy court's finding of intent to hinder or delay a creditor is not clearly erroneous. During the trial of this case, Tomberlin answered "that was part of it," when asked, "so you put it [money] in the SADI bank account to protect it from the IRS and any other creditor, right?" (Doc. 11-2 at 11). When asked if he wanted to "hinder" the ability of the IRS to get to his personal Regions Bank account, Tomberlin answered, "if I didn't do that, then I'm done. I'm done. I had no other option that I'm aware of." (Doc. 11-2 at 30). He further testified that he deposited his paychecks into the SADI account in order to protect the money from seizure by the IRS. (Doc. 11-2 at 30).

Tomberlin criticizes the bankruptcy court's decision as being at odds with acceptable pre-bankruptcy planning. Tomberlin relies in part on *Matter of Smiley*, 864 F.2d 562, 567 (7th Cir. 1989), in which the Seventh Circuit said that bankruptcy planning is not necessarily fraud on creditors. Tomberlin contends that the real question posed by his appeal is whether an intent to get by financially until a bankruptcy petition is filed constitutes the intent Congress considered so abusive so as to require denial of discharge. (Doc. 13 at 23).

In issuing its decision, the bankruptcy court was not persuaded by Tomberlin's reliance on *Matter of Smiley*, noting that that decision analyzed intent to defraud, whereas the actions of Tomberlin demonstrated intent to hinder or delay. (Doc. 1-2 at 4) (citing *Matter of Smiley*, 864 F.2d at 568).

NCP argues that the plain language of the Bankruptcy Code does not allow for the kind of grace-period for which Tomberlin appears to advocate and that, if it does, Tomberlin had ample opportunity in the years between his IRS audit and the levying of his accounts, and after the judgment in the Ohio case, to act to prepare for bankruptcy, but instead waited until the IRS levied his personal accounts, and then moved money to the corporate account to keep it safe from creditors.

The Eleventh Circuit does not appear to have addressed the issue of pre-bankruptcy planning within the context of §727(a)'s prohibition against intent to delay or hinder a creditor. The Eleventh Circuit, however, has recognized that some pre-bankruptcy

9

transfers can be non-fraudulent. *See In re Miller*, 39 F.3d at 306 (holding that a pre-bankruptcy preferential transfer to a creditor was not fraudulent and was distinguishable from pre-bankruptcy transfers to a non-creditor or a family member which "merit closer scrutiny").

Even if there is an allowance under section 727(a)(2) for delay or hindrance of a creditor to accomplish pre-bankruptcy petition planning, this Court cannot find that the facts in this case would allow for discharge under that theory. Courts which have discussed pre-bankruptcy planning in this context have noted that the line between legitimate pre-bankruptcy planning and impermissible intent is not clear. *See Matter of Wiggains*, 848 F.3d 655, 663 (5th Cir. 2017). One court examining a claim for denial of discharge reasoned that Congress has used the intent of the debtor to draw the line between bankruptcy planning and hindering creditors. *See In re Oberst*, 91 B.R. 97, 101 (Bankr. C.D. Cal. 1988). The timing of a transfer may be extrinsic evidence of improper intent. *Matter of Wiggains*, 848 F.3d at 663. "If the debtor has a particular creditor or series of creditors in mind and is trying to remove his assets from their reach, this would be grounds to deny the discharge. If the debtor is merely looking to his future wellbeing, the discharge will be granted." *In re Oberst*, 91 B.R. at 101; *see also In re Covino*, 187 B.R. 773, 779 (Bankr. S.D. Fla. 1995) (applying the *In re Oberst* reasoning to a different statutory section). Although this reasoning is in non-binding decisions, it is persuasive, and consistent with the Eleventh Circuit's statutory interpretation that "[a]lthough the statutory

provisions denying discharge are to be construed liberally in favor of the debtor, that 'applies only to the honest debtor.'" *Coady v. D.A.N.*, 588 F.3d 1312, 1315 (11th Cir. 2009) (citation omitted).

In this case, the factual finding of the bankruptcy court that Tomberlin intended to hinder or delay a creditor in the face of evidence of claims made by particular creditors is the kind of intent courts have found to require denial of discharge. *See In re Oberst*, 91 B.R. at 101. "Deference to the bankruptcy court's findings is particularly appropriate on the issue of intent." *Matter of Wiggains*, 848 F.3d at 663; *see also In re Jennings*, 533 F.3d at 1341 (affirming denial of discharge where the debtor claimed to have made transfers for a lawful purpose, but the bankruptcy court found that his "actual intent" was to hinder, delay, or defraud). Furthermore, the bankruptcy court found that Tomberlin continued to put salary in the SADI corporate account even after the bankruptcy petition was filed. This finding is not clearly erroneous. When asked at trial whether he opened a personal bank account after he filed for protection on January 28, 2016, Tomberlin testified that he had not. (Doc. 11-2 at 33). Such actions undermine an argument that Tomberlin's actions were just to get by until he filed his bankruptcy petition. Therefore, even if the Eleventh Circuit would allow for a period of intentional delay of a creditor for pre-bankruptcy planning despite the plain language of §727(a), the Court concludes that the factual finding of the bankruptcy court that Tomberlin intended to delay or hinder a creditor is not clearly erroneous and the decision to bar discharge is due to be AFFIRMED.

## VI. CONCLUSION

For the reasons discussed above, this Court, after *de novo* review of the legal issues, concludes that the bankruptcy court correctly applied the appropriate legal standards and also concludes that the factual findings in this case are not clearly erroneous. As a result, the judgment of the bankruptcy court denying discharge under 11 U.S.C. § 727 (a)(2)(A) is due to be AFFIRMED. A separate Judgment will be entered in accordance with this Memorandum Opinion.

Done this 12th day of February, 2020.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE